### WARD v. GRAND DETOUR PLOW CO.

*(Circuit Court, N. D. Illinois. January 8, 1883.)*

1. PATENT FOR INVENTION—COLORABLE DIFFERENCES—INFRINGEMENT.

Where defendant's device, used in a combination of parts, is the same for all practicable purposes, and performs the same function, and no other, in the mechanism as the device of complainant, and the difference between the devices is merely colorable, it is an infringement of complainant's patent.

2. SAME—EVIDENCE OF NOVELTY AND UTILITY.

Where the proof shows that many others had endeavored unsuccessfully to accomplish what the complainant achieved, and also that the device of complainant was at once accepted by the public, the fact of success and acceptance by the public in a field where others had tried and failed, is sufficient evidence that the device was both new and useful.

In Equity.

*J. G. Manaham*, for complainant.

*West & Bond*, for defendant.

BLODGETT, D. J. This is a bill to enjoin the alleged infringement of a patent to Adam B. Spies, No. 153,225, dated July 21, 1874, for an "improved harrow," and for an accounting. Defendant denies the infringement, and denies the validity of the patent for want of novelty. Complainant claims by assignment from the patentee, and no question is made to his title. The Spies harrow is made by attaching two or more sections to a draw-bar, so that each section may rise independently of the other, or others, and so that each section may preserve its relative position to the other section or sections, without the use of other hinges or other connecting devices between the section. The sections are joined to the draw-bar by means of an eyebolt fastened through the draw-bar so as to leave the eye in a vertical position, and a clevis which passes through the eye of the eyebolt, and is attached horizontally or flatwise to the front end of one of the section beams, and each section is connected to the draw-bar by two such joints. This form of connection gives two vertical joints or points of articulation,—one at the clevis-bolt and one at the connection between the clevis and eyebolt,—but only gives one joint

or point of movement laterally, which is at the connection of the clevis and eye, and is necessarily quite limited. The advantages claimed for this mode of connecting the sections to the draw-bar are—

(1) In turning around it is impossible for one section to get over or under another, as all the sections are kept in line of the draw-bar, from the fact that they are attached to the draw-bar at two points, and they are allowed so slight a lateral motion that they cannot interfere with, or override each other ; (2) the clevises have sufficient play at the eyebolt joint to allow an undulating or tilting motion of the sections, which enables them to adjust themselves to the inequalities of the ground ; (3) the two vertical joints make it easy to raise the sections freely to such height as may be required to clear them from accumulated rubbish, and also permits the sections to readily adjust themselves to the surface of the ground over which they pass.

The patentee says:

" I make no claim to the harrow generally, as to the shape or number of the sections or the structure of the sections, nor do I claim the draw-bar, for I am aware that these are not new; but I claim as my invention the eyebolts, A, A, A, A, and the clevises *e, e, e, e,* in combination, one pair of each to each section of the harrow, and in combination with the section and draw-bar, substantially in the manner and for the purpose specified."

The defendant uses the clevis in precisely the position and relation to the other parts of the mechanism as is shown in the complainant's patent, but instead of an eyebolt and shank, which passes through the draw-bar, defendant uses an eye fastened to the draw-bar by a bifurcated clip, which clasps the draw-bar on each side, and the legs of which are secured to the draw-bar by bolts or rivets. The eye is set vertically, and the only difference in fact between the defendant's joint or coupling, by which his sections are attached to the draw-bar, and the complainant's, is that the defendant's eyebolt has this split shank instead of the straight bolt passing through the draw-bar, as shown by complainant. Defendant's joint is the same for all practical purposes and performs the same functions and no other, in the mechanism as the Spies joint. The difference is merely colorable and clearly infringes the patent.

Upon the question of novelty, defendants have put in evidence—

" (1) Patent of J. H. Eldward, issued November 17, 1868, for a sectional harrow ; (2) patent to Andrew Nuquist, issued July 27, 1869, for a harrow with zig-zag sections; (3) patent to N. McCuen, dated February 25, 1862, for a harrow in sections; (4) patent to J. E. Van Riper, dated August 6, 1867, for a sectional harrow."

In all these harrows the sections are shown to be connected to the draw-bar by joints or links, but none of them show the flat joint peculiar to Spies' device.

Defendants have also shown by the proof the use of two harrows not patented prior to the invention of Spies,—one made as early as 1862, by John A. Jacobs, of Whiteside county, Illinois,—in which the sections were loosely jointed to the *draw-bar*, but the joints were different in their formation and operation from the Spies' joint in this: the joint was formed by a bolt passing through the draw-bar, the rear of which was split or bifurcated so as to clasp or embrace the forward end of one of the section beams flatwise, or horizontally, and attached to the beam by a bolt passing horizontally through these legs and the beam. This gave the clevis pin-joint of the Spies device, but did not give the eyebolt and clevis-joint of Spies' patent, and therefore did not allow of the tilting motion which is obtained by the Spies connection.

The other was made and used by Mr. J. A. Patterson, of Rock Falls, Whiteside county, Illinois, as early as 1870, in which the sections were attached to the draw-bar by hooks and eyes, forming a joint similar in its operations and characteristics to the joint in the Jacob's harrow, only allowing motion in one direction, and one point of articulation.

The differences between these couplings, shown in the Spies device, and those shown in the older art, are not in one sense very wide, but the peculiar adaptation of the Spies coupling, to secure just the result needed for a successful harrow, is abundantly shown by the proof, and undoubtedly makes the point, and perhaps the only point, in which he improved on what others had done before him. The proof, however, shows not only that many others had endeavored unsuccessfully to accomplish what he achieved, but also that his device was at once accepted by the public; and the fact of success, and acceptance by the public, in a field where so many others had tried and failed, is sufficient evidence that his device was both new and useful, and the result of inventive genius.

The defendants insist that their harrow is like the harrows of those who preceded Spies in the art. The answer to this is simply that it is like prior inventions in all particulars except the Spies double joint, and they have taken the Spies double joint bodily and appropriated it to their use by a mere colorable change, which leaves the joint intact to perform the function which Spies intended it should perform. Spies' patent, and the records of the patent-office also, show that Spies fully comprehended the point of difference between his invention and that of those who had preceded him, and that he claimed as the special merit of his device the mode of attaching his sections to the draw-beam, 1, by these flat or horizontal double joints; and the opin-

ion of the commissioner in chief of the patent-office, which is in evidence in the case, shows that after the rejection of Spies' application for a patent by the primary examiner, his patent and claim was allowed, on appeal to the principal examiner, upon the specific ground that he had accomplished by his double joint what the state of the art showed no inventor who had preceded him had done. It is true, this decision of the examiner as to the patentability of the device is not conclusive upon this court, but I think it deserving of mention that the distinguishing merit of Spies' harrow was understood by himself and appreciated by the patent-office, and is not the *ex post facto* discovery of an expert or solicitor after the issue of the patent.

The complainant is entitled to a decree finding the patent valid, and that defendant has infringed the same.