146

## DIRIGOLD METALS CORPORATION v. ERNST KERN CO. et al.

No. 7530.

District Court, E. D. Michigan, S. D.

April 4, 1941.

McLeod, Fixel & Fixel, of Detroit, Mich., for plaintiff.

Butzel, Eaman, Long, Gust & Bills, of Detroit, Mich., and Sanborn & Andre, of St. Paul, Minn., for defendants.

MOINET, District Judge.

The original decision of this court in said cause, upon appeal to the Circuit Court of Appeals, American Dirigold Corporation v. Dirigold Metals Corporation, 6 Cir., 104 F.2d 863, 865, was reversed, the decision using the following language: "It is clear, however, that all facts bearing upon the controversy and necessary to its determination are not before the court. Since both litigants have marketed their products under the trade name through retail dealers and distributors throughout the United States, we are unable to say upon this record whether the condemned trade-mark 'Dirigold' has any value if excluded from use in connection with articles moving in interstate commerce. We are likewise unable to say upon this record whether a property right resides in a formula and process when the former has been given to the public and may proclaim the latter. Certainly a court of equity will not sustain restraint in the use of that which lies on the public commons accessible to all. It therefore becomes necessary to remand the case for further evidence and appropriate findings of fact thereon. * * * Decree reversed without prejudice and cause remanded for further proceedings in conformity herewith."

What might perhaps be termed a supplementary hearing was had before this court, and counsel for the parties respectively appeared with their witnesses, and records, and depositions and additional proofs were taken herein. Depositions of witnesses on behalf of said plaintiff, as well as oral

testimony, were given to show the extent of the sale and trade of the particular product herein involved, the enormous number of sales, and the numerous customers who have purchased the particular product all within the State of Illinois.

The plaintiff herein has its factory in Barrington, Illinois, and transacts an extensive business in the State of Illinois, selling only its Dirigold products to retail firms who dispose of the same in the State of Illinois. Goldblatt Bros. alone have eight stores in Illinois and have sold thousands of dollars' worth of Dirigold; have spent thousands of dollars in advertising the name "Dirigold" and consider that the name has a special significance and good-will in the State of Illinois. Plaintiff only uses the name "Dirigold" on merchandise sold in Illinois. However, Illinois has been the largest field since Dirigold was marketed in the United States and one store, according to the evidence, having sold "Dirigold" to 250,000 customers.

■ Aside from the order of the Federal Trade Commission, in respect to the interstate commerce of the particular product, and under the particular name herein, is concerned, this court is satisfied that the plaintiff herein can manufacture and sell within the State of Illinois solely without any violation of the said order of the Trade Commission, and the court finds and determines that the particular trade name herein involved has great value as indicated by the numerous sales, and the numerous dealers of the particular product herein. Federal Trade Commission v. Bunte Bros. Inc., Feb. 17, 1941, 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881.

■ Upon the question of the effect of the dissolution of the Swedish corporation, and as affecting the rights of the parties herein and the plaintiff herein, the court finds that the contract between the Swedish company and the inventors provided that "should the Company get into difficulties or go through bankruptcy or their activity cease, all the Company's rights revert back to the inventors according to the contract." The dissolution of the Swedish company was accomplished after the final hearing in this case and after the contract was executed by and for the Swedish company with the plaintiff herein. The Swedish company's interest consisted solely of the right to receive 40% of "cash, stock, joint stock, royalty or other useful things" derived from the granting of the exclusive license. It is this 40% which would revert to the inventors now that the Swedish company is dissolved, and the contract does not expressly or impliedly provide for the cancellation or termination of any outstanding valid contract, granted prior to the dissolution of the Swedish corporation.

■ Upon the question of the secret process herein, the Court, upon the so-called supplementary hearing, observed all of the precautions as indicated in the opinion of the Appellate Court; the testimony of the two individuals was taken secretly in the chambers of the court by a stenographer; the notes were placed with the court and were transcribed later in the court's chambers and the transcription and the notes were delivered to the court who now has them in its possession; thereafter, counsel for both parties were permitted to read the testimony of Molin and Von Molmberg so taken, as the court believed it was necessary that they have some knowledge as to the evidence taken in order to intelligently present the matter to the court.

It is contended herein that there is no secret process because of the fact that the constituent metals and the approximate percentages necessary to produce the product in question, were published in several books, and counsel, and some witnesses, indicated that in ordinary foundry practice, anyone could proceed and produce the particular metal in question. The court is unable to find this to be true. While Dr. Waldman's book and articles submitted to the Court of Appeals, upon the original hearing, gave only approximate percentages of the constituent metals, the formula in Brandt's book was supplemented by various fluxes not mentioned in the book. No witness testified that with the Brandt formula alone Dirigold could be produced. Von Molmberg testified that the metal could not be made from approximate percentages.

Molin in the original answer filed herein agreed that there was a secret process, and in his answer filed upon the supplementary hearing, he changed his position and contended that there is no secret process. The court is somewhat impressed by the position in which Molin now finds himself; that he is now obviously prompted in taking this position as a matter of interest.

The process, both parties agreed, concerned itself with the manner of mixing the metals, the order in which they were introduced, and the temperature control at various stages of the melting, was a very important factor; as well as moulding and casting. This process was considered by both, something which had been jointly developed and which accomplished results not theretofore nor thereafter attained by any other persons or firms. The particulars in which the ultimate product of Molin and Von Molmberg differed from others of a similar kind were, uniformity of color and freedom from imperfections such as blisters, blow-holes, white spots or cracks and oxidization. The finished product derived from the process is entirely different in these respects from any other metal ever manufactured, and it is therefore, immaterial whether the result was within the expected mechanical skill of any skilled foundryman, or whether the means by which the discovery was made are obvious or whether it was experimentation with known factors that led to the result. Dirigold is an alloy, not a metal. It is a chemical composition which Molin and Von Molmberg developed after years of experimentation.

■■ A metallurgist or an experienced foundryman, even by using the formula stated in the book "Engineering Alloys" which was called to the attention of the Appellate Court, would get a result appearing somewhat like Dirigold but which would merely be lumps of metal full of impurities; Molin and Molmberg were aware of many published formulas of Dirigold before they developed what is called the "secret process", but what was developed is different from anything else and produces an alloy different than ever was produced in the world before. There are several steps in the process of making the metal. Temperature control enters greatly into the result obtained; the formula published by Dr. Dornblatt is different from the correct Dirigold because it shows approximate quantities whereas the quantities must be exact and definite. There is no secret of the ingredients, which are copper, aluminum, tin and nickel, which enter into the composition of the metal. But the proportions in which the ingredients are introduced and the definite ways that those four elements are mixed is a part of the secret. In order to obtain different grades of hard-

ness in the metal and yet have it workable, with a gold color and clean, Molin and Molmberg varied the amounts of the ingredients until they found a metal that was satisfactory. No one can determine the process by which Dirigold is made either by inspection of the metal or an analysis of it.

The formula in Dr. Brandt's book does not specify at what temperature the copper and aluminum are melted although it makes a difference in a metal whether a certain temperature is maintained when it is melted. And in making Dirigold, the temperature at different stages of the process has a great deal to do with what the finished product is. Brandt's book says nothing about the temperature used in making the metal at any stage of the proceedings yet, if the process were published, there would be a disclosure of the temperatures of the metal and the various compounds at each stage.

While it was asserted that the process had been published in a book, Molin, who made the claim, could not name the book, and finally claimed that the process was one which could be interpreted by using common foundry practice, although he and Molmberg after some years of foundry practice, decided that the process was something only they knew and therefore locked it in a safe in Sweden, and agreed never to disclose it except according to the contract. He now admits that he has since learned that no one he knows of, has discovered it although there are thousands of foundrymen. And, although he contends there was no secret process, he finally admitted that he would not say that it would be a common foundry practice for a foundryman to discover this wonderful metal and defined it as an extraordinary result.

It also appears to the court that beside temperature control at the various stages of manufacture, there is still a knowledge required with reference to the mixing and melting in order to prevent over-heating the metal, and the court is persuaded that the mere fact that one knows the percentages or constituents is not sufficient to enable even an experienced foundryman to make the metal in question.

The process of making Dirigold consists of several steps, such as mixing and melting, during which the metal is heat-treated under controlled temperatures, all of which are secret. Others, such as International

Silver Company, and American Brass Company, have endeavored to make a similar metal, but were unable to succeed, because the product was full of impurities, and it could not be properly worked, rolled, stamped or forged.

The fact that the means, by which the making of Dirigold was discovered, are obvious, and a result of experimentation, does not destroy the value of the discovery to the one who made it. The secret process developed by Molmberg and Molin resulted in creating a metal free from imperfection, with a gold color that retains its original shade without turning brassy, and of a uniformity, hardness and utility which has caused an immediate and widespread reception.

The court therefore finds and determines that the process involved herein, for the production of the metal, "Dirigold", is a secret process and is entitled to the court's protection. A. O. Smith Corp. v. Petroleum Iron Works Co., 6 Cir., 73 F.2d 531, 538, 539; Ward v. Grand Detour Plow Co., C.C., 14 F. 696; Newbury v. Fowler, C.C., 28 F. 454; Railway Register Mfg. Co. v. North Hudson County R. Co., C. C., 26 F. 411.

The court hereby reaffirms its decision heretofore entered in said cause, on all of the issues involved herein, and finds and determines that the plaintiff herein is entitled to the relief prayed for. Accordingly a decree may be presented.